IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD BRUNO, and : | |
| CYNTHIA BRUNO : | |
|        Plaintiffs : | |
|   v. : | 3:CV-02-2353 |
| : | (CHIEF JUDGE VANASKIE) |
| BENNY JOSE JACKSON, A & S : | |
| TRUCKING SERVICES, INC., HENRY : | |
| GARFIELD BRICKEY, SALEM LEASING : | |
| CORP. : | |
|        Defendants : | |

## MEMORANDUM

On December 26, 2002, Plaintiffs Donald and Cynthia Bruno commenced this negligence action against Defendants after Mr. Bruno was injured in a multiple vehicle accident on I-81 northbound on January 19, 2001. Specifically, Benny Jose Jackson was driving a tractor-trailer for A & S Trucking Services in dark and icy conditions when his tractor-trailer jack-knifed.  Henry Garfield Brickey then collided with Mr. Jackson's vehicle while driving a tractor-trailer for Salem Leasing Corporation.  Mr. Bruno's tractor-trailer then collided with Mr. Brickey's tractor-trailer, resulting in serious injuries.

On May 28, 2004, Defendants A & S Trucking Services and Mr. Jackson moved for summary judgment, contending that Mr. Jackson's alleged negligence was not the proximate cause of Mr. Bruno's injuries.  Specifically, Defendants argue that Mr. Brickey's collision with Mr. Jackson was a superseding cause of Mr. Bruno's injuries.  Defendants further assert that

Mr. Bruno was more than 50% contributorily negligent, and thus, is precluded from recovery. On May 31, 2004, Plaintiffs moved for summary judgment, contending that all of the Defendants were strictly liable for the failure to display warning devices in accordance with 75 PA. CONS. STAT. ANN. § 4530 and its implementing regulations.

For the reasons set forth below, both motions for summary judgment will be denied. Plaintiffs' motion for summary judgment will be denied because 75 PA. CONS. STAT. ANN. § 4530 and its regulations are grounded in negligence, not strict liability.  Furthermore, a jury could reasonably find that Mr. Jackson and Mr. Brickey did not breach the statutory standard of care under the circumstances existing at the time of the accident.

The motion for summary judgment filed on behalf of A & S and Mr. Jackson will be denied because a jury could reasonably find that Mr. Jackson's negligence was the proximate cause of Mr. Bruno's injuries given that his jack-knifed tractor-trailer started a continuous chain of collisions in a short period of time on a dark, icy, and foggy interstate highway.  A jury could also find from the evidence that Mr. Jackson failed to warn on-coming vehicles of his jack-knifed tractor-trailer.  A jury could also reasonably find that Mr. Brickey's collision was not a superseding cause of Mr. Bruno's injuries because it was reasonably foreseeable that Mr. Brickey would collide with Mr. Jackson under the circumstances described above.  Finally, the extent of Mr. Bruno's alleged contributory negligence is a quintessential jury issue.

**BACKGROUND**

On January 19, 2001, Benny Jose Jackson was driving a tractor-trailer for A & S Trucking on I-81 northbound at about 3:40 a.m. (Defs' Statement of Material Facts "SMF" ¶ 5; Pls' SMF ¶ 4.)[1] The road was icy and visibility was low due to freezing rain. (Defs' SMF ¶ 6.) When Mr. Jackson felt ice on the roadway, he applied his brakes, causing the tractor-trailer to jack-knife. (Pls' SMF ¶¶ 12.) Mr. Jackson's tractor-trailer jack-knifed approximately fifty feet south of mile marker 131 in Schuykill County, Pennsylvania. (Id. ¶ 4.)

As a result of his tractor-trailer jack-knifing, the front of Mr. Jackson's cab came to rest against the left guard rail and the trailer was in the left lane of I-81. (Jackson Dep. at 14, Defs' Ex. E, Dkt. Entry 63.) The parties dispute whether Mr. Jackson's trailer was partially in the right lane and how much road space existed to the right of the trailer. As to whether Mr. Jackson's trailer was partially in the right lane, Mr. Jackson testified during his deposition that no portion of the trailer was in the right lane. (Id.) Mr. Brickey testified during his deposition that half of the right lane was occupied by Mr. Jackson's tractor-trailer. (Brickey Dep. at 43, Ex. A, Dkt. Entry 81.) As to the amount of space to the right of the trailer, Mr. Jackson contends that there was at least twenty-two feet. According to Mr. Jackson's accident reconstruction expert, Michael Berkovitz, the two northbound lanes at the site of the accident measure approximately twelve feet in width and are bordered on the east by a deceleration/acceleration lane measuring

---

[1] Citation to a moving party's statement of material facts signifies that the parties do not dispute that particular fact.

approximately fourteen feet. There was also a shoulder of eight feet. (Defs' Ex. B at 2, Dkt. Entry 63.) Plaintiffs, contesting these assertions, submitted a photograph purporting to show that there was no deceleration/acceleration lane at the accident site. (Pls' Ex. A, Dkt. Entry 67.) Furthermore, Plaintiffs' accident reconstruction expert, Lloyd Patton, does not mention the deceleration/acceleration lane in his description of the accident site. (Pls' Ex. B, p.2, Dkt. 67.)

After Mr. Jackson's tractor-trailer jack-knifed, it was hit by a tractor-trailer driven by Henry Garfield Brickey. Mr. Brickey was driving the tractor-trailer within the scope of his employment for Salem Leasing Corporation. (Pls' SMF ¶¶ 6, 8.) Mr. Brickey's wife, Dora Brickey, was a passenger in the tractor-trailer. (Pls' SMF ¶ 7.) Mr. Brickey was driving forty-five miles per hour in the right hand lane when he first saw Mr. Jackson's tractor-trailer at a distance of one-hundred to one-hundred fifty feet. (Pls' SMF ¶ 18; Brickey Dep. at 41-42, Pls' Ex. 13, Dkt. Entry 60.) As soon as he saw Mr. Jackson's tractor-trailer, he hit his brakes and slid toward the center of the two lanes. (Brickey Dep. at 44.) The left front corner of Mr. Brickey's trailer then hit the right rear corner of Mr. Jackson's trailer. (Id. at 47-48; Pls' Ex. 15, Dkt. Entry 60.)

The parties dispute whether Mr. Jackson attempted to warn drivers of his jack-knifed tractor-trailer and the amount of time he had to warn other drivers before the collision between him and Mr. Brickey occurred. As to the amount of time, Mr. Jackson testified that Mr. Brickey collided with his tractor-trailer about one minute after his tractor-trailer jack-knifed. (Jackson

Dep. at 28-29, Defs' Ex. C, Dkt. Entry 63.)  According to Mr. Brickey, Mr. Jackson told him that ten minutes passed between the time Mr. Jackson's tractor-trailer jack-knifed and Mr. Brickey collided with him.  (Brickey Dep. at 74-75, Pls' Ex D, Dkt. Entry 67.)  Mr. Jackson purportedly informed Mr. Brickey that he believed he could have moved his truck before Mr. Brickey collided with him.  (Id. at 74.)  As to the warnings, Mr. Jackson testified that he reported on his CB radio two times that his truck jack-knifed.  (Jackson Dep. at 22-23, Defs' Ex. D, Dkt. Entry 63.)  He further testified that he put his four-way blinkers on.  (Jackson Dep. at 25, Defs' Ex. C, Dkt. Entry 81.)  Mr. Jackson then grabbed a flashlight and flare from his truck and walked about half of a football field to 1,000 yards south to stand in the middle of the road to warn oncoming vehicles.  (Jackson Dep. at 51, Pls' Ex. 11, Dkt. Entry 60; Jackson Dep. at 61, Defs' Ex. C, Dkt. Entry 81.)  Contrary to Mr. Jackson's deposition testimony, Mr. Bruno testified that his CB radio was on and that he did not hear any warnings about the jack-knifed tractor-trailer.  (Bruno Dep. at 106-08, Pls' Ex. G, Dkt. Entry 67.)  Mr. Brickey testified that he did not see any flares, flashlights, or emergency triangles to warn of the jack-knifed tractor-trailer.  (Brickey Dep. at 43-44, Pls' Ex. E, Dkt. Entry 67.)  In addition, Mr. Patton stated in his expert report that Mr. Jackson's truck was equipped with reflective triangles that Mr. Jackson never used.  (Pls' Ex. C at 6, Dkt. Entry 67.)

   As a result of the collision between Mr. Brickey and Mr. Jackson, Mr. Brickey's driver side was pinned against Mr. Jackson's trailer.  (Brickey Dep. at 51, Ex. F, Dkt. Entry 63.)  Mr.

Brickey's trailer was in the right hand lane at an angle. (Brickey Dep. at 82, Pl's Ex. 16, Dkt. Entry 60.) The trailer did not, however, take up the whole right-hand lane. (Id.) During Mr. Brickey's deposition, he testified that a truck that was going "real slow" and "careful" was able to drive around the accident scene on the right shoulder. (Brickey Dep. at 78-79, Ex. A, Dkt. Entry 81.)

After the collision, Mr. Brickey tried to get his vehicle loose from Mr. Jackson's vehicle for a minute to a minute-and-a-half. (Id. at 51.) Mr. Brickey then turned on his four way lights, which were located on the front fenders, the back end, and on the sides. (Id. at 87-88.) The flashers and back lights were pointed directly at oncoming traffic. (Id. at 130-31.) Mr. Brickey did not place warning triangles out on the road. The warning triangles were located in a box behind the driver's door, which was pinned against the Jackson trailer. (Id. at 94.)

Mr. Brickey and his wife got out of the truck on the passenger side. (Id. at 51.) After getting out of the truck, Mrs. Brickey saw Mr. Bruno driving towards her at the accident site. She began waving her arms to let him know of the accident. (Id. at 54.) According to Mr. Brickey, Mr. Bruno was driving at least sixty miles per hour. (Id. at 123.) When approaching the accident site, Mr. Bruno saw the outline of a trailer in the left lane. He thought the cab for the trailer was on the far right. (Defs' Ex. H at 159, Dkt. Entry 63.) Mr. Bruno did not attempt to drive on the side of the road because the fog prevented him from knowing whether he would fall down the side of the mountain. (Bruno Dep. at 161, Pls' Ex. F, Dkt. Entry 67.) Instead of

driving off the side of the road, Mr. Bruno aimed for the space between Mr. Brickey's tractor and trailer because he thought that space was the weakest point and would result in the least impact. (Bruno Dep. at 159-60, Pls' Ex. F, Dkt. Entry 67.)  Mr. and Mrs. Brickey dove over a guard rail to avoid being hit by Mr. Bruno.  (Brickey Dep. at 54-55, Ex. A, Dkt. Entry 81.)  The collision between Mr. Bruno and Mr. Brickey's tractor-trailer occurred between fifteen seconds to five minutes after Mr. Brickey's collision with Mr. Jackson.  (Jackson Dep. at 96, Ex. 7, Dkt. Entry 80; Brickey Dep. at 3, Ex. 8, Dkt. Entry 80.)  Mr. Bruno sustained serious personal injuries as a result of the collision.  (Pls' SMF ¶ 24.)

**DISCUSSION**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir.), cert. denied, 513 U.S. 1022 (1994).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. See Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). Once the moving party has satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. See Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). To establish negligence under Pennsylvania law, a plaintiff must prove (1) a duty or standard of care; (2) a breach thereof; (3) causation; and (4) actual damages. See Orner v. Mallick, 527 A.2d 521, 523 (Pa. 1987); Carlotti v. Employees of Gen. Elec. Fed. Credit Union No. 1161, 717 A.2d 564, 567 (Pa. Super. Ct. 1998).

The first issue that the parties dispute is whether Mr. Jackson and Mr. Brickey breached their standard of care by failing to warn Mr. Bruno of the presence of their vehicles in the travel portion of I-81. The standard of conduct required of a reasonable person may be prescribed by legislative enactment. Under Pennsylvania law, a violation of a statute or ordinance may serve as the basis for negligence per se. See Wagner v. Anzon, Inc., 684 A.2d 570, 574 (Pa. Super. Ct. 1996). Negligence per se has been defined as "'[c]onduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances.'" Id. (quoting White by Stevens v. Southeastern Pa. Transp., 518 A.2d 810, 815 (1986)). To establish a claim based on negligence per se, the following four requirements must be met:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
> (3) The defendant must violate the statute or regulation;
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

Id.

Under Pennsylvania law, a driver of a tractor-trailer "shall carry at least three portable emergency warning devices," 75 PA. CONS. STAT. ANN. § 4530(a), such as liquid burning emergency flares, electric emergency lanterns, or emergency reflective triangles. See 67 PA. CODE § 167.3. A driver is required to display such warning devices if the truck is stopped or

9

disabled "as soon as possible, but in any event within 10 minutes" of being stopped or disabled. 67 PA. CODE § 167.8(b)(1). If a tractor-trailer is stopped or disabled, the driver shall "immediately flash the two front and two rear signal lamps simultaneously as a vehicular traffic hazard warning and continue the flashing until [the driver] places the warning devices . . . in use on the highway." 67 PA. CODE § 167.8(a). "The flashing lights may be used at other times while a vehicle is stopped in addition to, but not in lieu of, the warning devices . . . ." Id. The driver shall place the warning devices on the road in the following manner:

> (i) One at the traffic side of the stopped or disabled vehicle, within 10 feet of the front or rear of the vehicle.
> (ii) One at a distance of approximately 100 feet from the stopped or disabled vehicle in the center of the traffic lane or shoulder occupied by the vehicle and in the direction toward traffic approaching in that lane.
> (iii) One at a distance of approximately 100 feet from the stopped or disabled vehicle in the center of the traffic lane or shoulder occupied by the vehicle and in the direction in which traffic in that lane is moving.

Id. § 167.8(b)(1).

In the present case, Plaintiffs moved for summary judgment contending that Mr. Jackson and Mr. Brickey are "strictly liable" for failing to display the warning devices in compliance with 75 PA. CONS. STAT. ANN. § 4530 and its regulations. Plaintiffs' argument as to strict liability is without merit. The plain language of the statute requires a driver to display such warning devices if the truck is stopped or disabled "as soon as possible, but in any event within 10 minutes" of being stopped or disabled. To the extent that Defendants failed to display the

warning devices in less than ten minutes after their vehicles were disabled, the determination of whether the defendants displayed the warning devices "as soon as possible" is grounded in negligence, not strict liability.  See Clack v. Pa. Dep't of Transp., 710 A.2d 148, 151-52 (Pa. Super. Ct. 1998) (affirming lower court's decision to submit question of negligence and causation under 75 PA. CONS. STAT. ANN. § 4530 and its regulations to the jury).  To the extent that Defendants failed to display the warning devices ten minutes after their vehicles were disabled, the plain language of the statute requires a finding that Defendants breached their standard of care under the facts of this case.  A fact finder must still determine, however, whether such a breach was the proximate cause of Mr. Bruno's accident.

As to whether Defendants breached their standard of care, the record contains numerous factual disputes.  During Mr. Jackson's deposition, he testified that Mr. Brickey collided with his tractor-trailer one minute after Mr. Jackson's tractor-trailer jack-knifed.  He further testified that Mr. Bruno collided with Mr. Brickey fifteen seconds later.  Mr. Brickey testified that Mr. Bruno collided with his tractor-trailer five minutes after the initial collision between Mr. Brickey and Mr. Jackson.  Based on this evidence, a jury could reasonably find that Mr. Jackson and Mr. Brickey were not negligent for the failure to warn Mr. Bruno of the accident because the collisions occurred within a short period of time.

A jury, however, also could reasonably find that Mr. Jackson was negligent for the failure to warn on-coming vehicles of the accident.  According to Mr. Brickey, Mr. Jackson stated that

ten minutes passed between the time Mr. Jackson's tractor-trailer jack-knifed and Mr. Brickey collided with him. Mr. Jackson further stated that he could have moved his truck before Mr. Brickey collided with him. Because the record is riddled with factual disputes, the issue must be decided by a jury.

The next issue the parties dispute is whether Mr. Jackson's jack-knifed tractor-trailer was the proximate cause of Mr. Bruno's injuries. Mr. Jackson moved for summary judgment contending that Mr. Brickey's collision was a superseding cause of Mr. Bruno's accident. He further argues that, as a matter of law, Mr. Bruno was more than 50% contributorily negligent.

"Legal or proximate causation involves a determination that the nexus between the wrongful acts (or omissions) and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable." First v. Zem Zem Temple, 686 A.2d 18, 21 n.2 (Pa. Super. Ct. 1996). "The test for proximate causation is whether a defendant's acts or omissions were a substantial factor in bringing about [a] plaintiff's harm." Id. "[A] cause can be found to be substantial so long as it is significant or recognizable; [thus,] it need not be quantified as considerable or large." Jeter v. Owens-Corning Fiberglas Corp., 716 A.2d 633, 636 (Pa. Super. Ct. 1998). Additional factors a court may use to determine if an act is a substantial factor in causing a plaintiff's harm include "(1) the number of other factors which contribute in producing the harm and extent of the effect which they have in producing it, (2) whether the defendant's conduct created a force or series of forces that are in continuous and

active operation up to the time of the harm, or has created a situation that is harmless unless acted upon by other forces for which the actor is not responsible, and (3) lapses of time." Restatement (Second) of Torts §433; accord Talarico v. Bonham, 650 A.2d 1192, 1195-96 (Pa. Commw. 1994).

"'A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" Frey ex rel. Frey v. Smith ex rel. Smith, 685 A.2d 169, 173 (Pa. Super. Ct. 1996) (citation omitted).  The fact that an intervening act of a third person is negligent in itself does not make it a superseding cause of harm to another if: "(1) the actor at the time of his negligent conduct should have realized that a third person might so act, or (2) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person so acted, or (3) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." Id.  "'[W]hat the original actor should have realized and what a reasonable man would say was highly extraordinary are, of course, fact questions which must in the majority of the cases be left to the jury.'" Id. (citation omitted).

The Pennsylvania Comparative Negligence statute provides in relevant part:

> the fact that the plaintiff may have been guilty of contributory
> negligence shall not bar a recovery by the plaintiff . . . where such
> negligence was not greater than the causal negligence of the
> defendant . . . against whom recovery is sought, but any damages

> sustained by the plaintiff shall be diminished in proportion to the
> amount of negligence attributed to the plaintiff.

42 PA. CONS. STAT. ANN. § 7102.

Viewing the evidence in the light most favorable to the non-moving parties, the record shows that Mr. Jackson's tractor-trailer was stopped for ten minutes before Mr. Brickey's collision. Mr. Jackson could have moved his tractor-trailer before Mr. Brickey's collision but he did not. Mr. Brickey first saw Mr. Jackson's tractor-trailer at a distance of one-hundred feet and he was driving forty-five miles per hour. He did not see any flares, flashlights, or emergency triangles to warn of the jack-knifed trailer. Mr. Jackson's jack-knifed trailer blocked the entire left lane and part of the right lane. There was no deceleration/acceleration lane on the right. Upon braking, Mr. Brickey's truck slid toward the center of the two lanes and he ultimately collided with Mr. Jackson. After the collision, Mr. Brickey's trailer was in the right hand lane at an angle. Mr. Brickey turned on his four way lights, which were located on the front fenders, the back end, and on the sides. Mrs. Brickey got out of the vehicle and began waving her arms in an attempt to warn Mr. Bruno of the accident up ahead. Mr. Bruno approached the accident scene between fifteen seconds and five minutes after Mr. Brickey's collision. When approaching the accident scene, Mr. Bruno saw the outline of a trailer in the left lane. He thought the cab was on the far right. Mr. Bruno did not attempt to drive around Mr. Brickey's tractor-trailer because the fog prevented him from knowing whether he would fall down a steep

bank on the side of the mountain. Because Mr. Bruno did not want to drive off the side of the mountain, he aimed for the space between Mr. Brickey's tractor and trailer because he thought that was the weakest point and would result in the least impact.

Based on the evidence, a jury could reasonably find that Mr. Jackson's alleged negligence was the proximate cause of Mr. Bruno's injuries because Mr. Jackson's jack-knifed tractor-trailer created a reasonably foreseeable and continuous chain of events that lead to Mr. Bruno's injuries. It was reasonably foreseeable that a chain of collisions would occur between Mr. Jackson, Mr. Brickey, and Mr. Bruno because the collisions occurred in a short period of time on a dark, foggy, and icy interstate highway. Further buttressing a finding of proximate cause is Mr. Jackson's purported failure to warn on-coming vehicles of his jack-knifed tractor trailer through CB announcements, flashers, flares, reflective triangles, or other warning devices. Similarly, a jury could also reasonably find that Mr. Brickey was not a superseding cause of Mr. Bruno's injuries because it was foreseeable that Mr. Brickey would collide with Mr. Jackson and that Mr. Bruno would in turn collide with Mr. Brickey under the circumstances described above.

As to Mr. Jackson's contention that Mr. Bruno was more than 50% contributorily negligent, a jury could rationally find that Mr. Bruno acted reasonably because Mr. Bruno received no warning of the upcoming collision. A jury could also rationally find that Mr. Bruno acted reasonably in hitting the perceived weakest point of Mr. Brickey's tractor-trailer rather

than attempting to swerve around the accident given the fog and darkness that prevented Mr. Bruno from seeing whether there was enough shoulder space to safely avoid the accident. As a result, Mr. Jackson's and A & S Trucking's motion for summary judgment will be denied.

## CONCLUSION

For the reasons set forth above, the parties' motions for summary judgment will be denied. An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD BRUNO, and : <br> CYNTHIA BRUNO : <br>              Plaintiffs : <br>    v.               : <br>                      : <br> BENNY JOSE JACKSON, A & S : <br> TRUCKING SERVICES, INC., HENRY : <br> GARFIELD BRICKEY, SALEM LEASING : <br> CORP., A & S TRUCKING SERVICES, : <br> INC. : <br>              Defendants : | 3:CV-02-2353 <br> (CHIEF JUDGE VANASKIE) |

## ORDER

**NOW, THIS 25th DAY OF MAY, 2005**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment (Dkt. Entry 58) is **DENIED**.

2. Plaintiffs' motion for summary judgment (Dkt. Entry 59) is **DENIED**.

3. A telephonic scheduling conference will be conducted on **Monday, June 13, 2005 at 2:30 p.m.**  Counsel for Plaintiffs is responsible for placing the call to 570-207-5720.  All parties shall be ready to proceed before the undersigned is contacted.

                                              **s/ Thomas I. Vanaskie**
                                              Thomas I. Vanaskie, Chief Judge
                                              Middle District of Pennsylvania